No. 23,285.

W. R. CAREY and ELMER E. HOARD, Partners, etc., *Appellees*, v. F. F. LEWIS et al., *Appellants*.

### SYLLABUS BY THE COURT.

REAL-ESTATE AGENT—*Purchaser Found—Commission Earned—No Prejudicial Error Appears in the Record.* The proceedings examined, and *held*, the district court did not commit error in rulings relating to evidence and to cross-examination of witnesses; findings of fact warranting the judgment rendered were sustained by the evidence, and were not induced by instructions given the jury; and a motion for a new trial was properly denied.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed December 10, 1921. Affirmed.

*George E. McMahon,* of Anthony, for the appellants.
*E. C. Wilcox,* and *Myrtle Youngberg,* both of Anthony, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover an agent's commission. The plaintiffs prevailed, and the defendants appeal.

The plaintiffs are real-estate agents. The defendants are brothers, and are owners of a highly improved tract of land in Harper county, known as Deer Park Farm. F. F. Lewis, without authority from his brothers, listed the farm with the plaintiffs, for sale at the price of $125 per acre. Some months later the plaintiffs interested J. O. Johnson in purchase of the farm. F. F. Lewis said the farm could not then be bought for less than $150 per acre. He offered to sell at that price, and Johnson accepted the offer. Later J. A. Lewis, and still later W. M. Lewis, agreed to sell to Johnson at that price. The defendants then commenced to jockey. They said it would be necessary for Johnson to buy the wheat on the land, which he agreed to do. The defendants then required Johnson to buy a miscellaneous assortment of personal property on the land, which he agreed to do. The defendants then raised the price of the land to $175 per acre, and the negotiations came to an end.

Every material fact in the case was covered by interrogatories propounded to the jury, which, with the answers returned, follow:

"1. Do you find that F. F. Lewis listed the real estate described in plaintiffs' petition with the plaintiffs as real-estate brokers, on or about December 1, 1918, at $125 per acre? Answer: Yes.

"2. If you answer the foregoing interrogatory in the affirmative, state whether or not there was any contract between the plaintiffs and F. F. Lewis at that time as to what their compensation should be? Answer: No.

"3. If you answer the first interrogatory in the affirmative, state whether or not F. F. Lewis had authority from W. M. Lewis and J. A. Lewis to list the same? Answer: No.

"4. If you answer the last interrogatory in the negative, state whether or not the said W. M. Lewis and J. A. Lewis, or either of them, have since ratified said act of F. F. Lewis. Answer: Yes.

"5. State (a) whether or not the plaintiffs procured one Johnson to negotiate with the defendants for the purchase of said real estate; (b) whether or not at that time said F. F. Lewis offered to sell said real estate at $150 per acre to said Johnson; (c) whether or not said W. M. Lewis and J. A. Lewis offered to take the sum of $150 per acre for said real estate; and (d) whether or not said Johnson offered with said defendants that he would purchase said real estate at $150 per acre. Answer: (a) yes; (b) yes; (c) yes; (d) yes.

"6. If you answer (a) of the foregoing interrogatory in the affirmative, then state whether or not there was any condition for the sale of the wheat crop before the acceptance by Johnson of the proposition of said defendants to sell the same at $150. Answer: No.

"7. If you answer (a) of interrogatory No. 5 in the affirmative, (a) state whether or not there was later made a proposition by the defendants for Johnson to purchase the growing wheat; (b) if so, was the same accepted by said Johnson, and (c) if so accepted, what was the price agreed upon? Answer: (a) yes; (b) yes; (c) $1,250.

"8. If you find that a proposition was made and accepted to sell said real estate at $150 per acre, and later that there was an additional proposition made by the defendants and accepted by the plaintiffs to buy the growing wheat, do you find that, after the said propositions and acceptance, there were negotiations with reference to the purchase of a stallion, a gasoline engine and sawing machine, and twenty-eight head of deer, and if so, what was the price agreed upon for the purchase of said various articles? Answer: Yes. Deer, $100 per deer; stallion, $500; sawmill, $1,000.

"9. Do you find that the witness Johnson was ready, able and willing to purchase the property at and for the price and upon the terms agreed upon? Answer: Yes.

"10. Do you find, after said negotiations were completed for the sale of said real estate and personal property, that the same was not consummated because F. F. Lewis stated that he would not sell the land for less than $175 per acre? Answer: Yes.

"11. Did the said defendants, after the said Johnson had accepted their proposition for the sale of said real estate and personal property, then make an agreement with said plaintiffs that they would complete said transactions only in event the said plaintiffs would charge them only $1,000? Answer: No.

"12. If you answer the last interrogatory in the negative, (a) state if, after said Johnson had agreed to purchase said real estate and personal property from the defendants, there was any contract made between the plaintiffs and the defendants respecting compensation for their services, and (b) if so, state the full terms thereof. Answer: (a) yes; (b) $1,000 if deal closed immediately.

"13. What was the usual and customary compensation of real-estate brokers in and about the vicinity of Anthony at the time of the negotiations involved in this suit? Answer: 5 per cent on first $1,000 of consideration; 2½ per cent on each succeeding $1,000."

The defendants' brief opens with an account of the marvelous creation of Deer Park farm by Joseph Lewis, father of the defendants, out of a portion of the "Great American Desert." Because of its literary qualities and historical value, this account might well have a place in the archives of the state historical society. Following the proem is a critical essay on the proceedings in the district court, very interesting to read, but not regardful of approved methods of demonstrating error, and not abounding in matters of gravity.

Complaint is made that one of the defendants was not permitted to give oral testimony relating to the contents of a letter. The letter was not lost or destroyed or inaccessible, but was in possession of the witness, who merely neglected to bring it to the trial. Complaint is made that the defendants were unduly restricted in the cross-examination of witnesses. Perusal of the record convinces the court that cross-examination was indulged in to an extent which

Carey v. Lewis.

sufficiently developed everything of importance in the case. Complaint is made that the court misdirected the jury in matters of law. The issues were very simple, the law applicable to the case was neither intricate nor doubtful, and the instructions were prepared by a capable and experienced judge. This court has examined the instructions no further, however, than to ascertain that the findings of fact were not constrained by the charge given the jury. The facts having been found in detail, this court can apply the law to them.

Complaint is made that findings of fact were not sustained by the evidence. In discussing this subject, the defendants rely on testimony favorable to themselves. The jury evidently preferred the evidence and inferences from evidence favorable to the plaintiffs, and this court is not authorized to revise the jury's solution of conflicts in the evidence. The fourth finding is the subject of special complaint, because it is said knowledge is essential to ratification, and F. F. Lewis's brothers had no knowledge that he had listed the land with the plaintiffs. There is circumstantial evidence warranting the conclusion that W. M. and J. A. Lewis did not abide in utter ignorance of how the plaintiffs became interested in the sale of their land. However this may be, they did adopt the employment of the plaintiffs by F. F. Lewis. Other findings, including the ninth, were well supported by the evidence.

An affidavit filed in support of the motion for a new trial did not disclose any newly discovered evidence, and did not otherwise furnish ground for a new trial. Other matters proposed by the defendants as grounds of reversal are without substantial merit. The plain truth is, the defendants overreached themselves in their maneuvers with the purchaser whom the plaintiffs procured, and then were thoroughly beaten on the facts, in their effort to avoid payment of the plaintiffs' well-earned commission.

The judgment of the district court is affirmed.